IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ALAN NORCUTT,<br><br>    Petitioner,<br><br>  vs.<br><br>CHRISTOPHER MILLER, Superintendent,<br>Great Meadow Correctional Facility,<br><br>    Respondent. | No. 9:15-cv-00221-JKS<br><br>MEMORANDUM DECISION |

   Alan Norcutt, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Norcutt is in the custody of the

New York State Department of Corrections and Community Supervision and incarcerated at

Great Meadow Correctional Facility.  Respondent has answered the Petition, and Norcutt has not

replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

   On February 11, 2010, Norcutt was charged with third-degree arson in an indictment that

alleged that Norcutt set fire to a camping trailer.  Norcutt pleaded not guilty to the charge and

proceeded to a jury trial.  During voir dire, the trial court cautioned prospective jurors that they

were not to read, listen to, or watch any media accounts of the case.  When the court asked

whether any of them had seen or heard any news accounts of the case, each of the prospective

jurors replied in the negative.  Defense counsel used only two peremptory challenges during jury

selection.  At the conclusion of jury selection, Norcutt asked for a change of venue, alleging that

several newspaper articles had disclosed some of his criminal history, including a sentence

imposed upon Norcutt 46 years earlier in connection with a fire that led to the death of a fireman,

which impaired his right to a fair trial. The court denied the motion, stating that the parties had been able to select an impartial jury.

Before opening statements, the court instructed the jury about general procedures for the trial and admonished the jurors not to read, listen to, or watch accounts of the trial. The court further told the jurors to contact one of the court officers if any of the court's procedures were violated so that the court could speak with the juror in chambers.

During trial, the prosecution presented 10 witnesses and 23 exhibits. Norcutt presented no witnesses or exhibits. Part of the prosecution's evidence referred to Jamie Beaumont, who had recently been in jail with Norcutt and had given some information about the fire to William Cartner, the owner of the camping trailer. The prosecution proffered the testimony of an administrative clerk for the Onondaga County Justice Center, who identified records, which were also entered as exhibits, showing that Norcutt was housed with Beaumont while in jail. The evidence was presented in anticipation of Beaumont's testimony regarding admissions Norcutt allegedly made about the fire while they were housed together. The following day, however, the prosecutor informed the court, outside the presence of the jury, that Beaumont had made himself unavailable, which the prosecution believed was due to intimidation. The court instructed the jury that no inferences could be drawn against Norcutt based on the fact that he may have been in custody while awaiting his trial and that the exhibits relating to Norcutt and Beaumont being in jail were not available for the jury's consideration.

During cross-examination of two of the prosecution's witnesses, defense counsel asked questions regarding the criminal history of Anthony Cartner, the son of the camping trailer's

owner.  In both instances, the court sustained the prosecution's objection to the line of inquiry without further comment from defense counsel.

At the conclusion of trial, the jury found Norcutt guilty of third-degree arson.  Norcutt then moved to set aside the jury verdict pursuant to New York Criminal Procedure Law ("CPL") § 330.30(1) on the ground that the court prevented him from presenting evidence that would show that Anthony Cartner was an alternative suspect.  According to Norcutt, he was precluded from eliciting testimony that Cartner had an arson conviction and an uncharged arson in his criminal history.  The trial court denied Norcutt's motion on the ground that there was no testimony that Cartner was present at the time of the fire, and Cartner was not called as a witness.  The court further stated, "There were no facts in this case that could in any way establish relevant testimony that a third party was responsible for the starting of this fire."  The court subsequently sentenced Norcutt, as a persistent felony offender, to an indeterminate term of 25 years to life imprisonment.

Through counsel, Norcutt appealed his conviction, arguing that: 1) there was insufficient proof at trial to establish that the trailer was a "building," an element of third-degree arson; 2) the trial court denied Norcutt a fair trial when it failed to conduct any inquiry after Norcutt presented evidence that a juror may have read a newspaper article pertaining to his case; 3) the conviction was against the weight of the evidence because: a) the case against him was circumstantial, and b) there was insufficient proof that he started the fire; 4) he was deprived of the opportunity to present a defense when he was precluded from presenting evidence that Anthony Cartner was an alternative suspect; 5) he was deprived of a fair trial when the jury was presented with evidence showing that he had been incarcerated since his arrest; and 6) trial

counsel was ineffective for failing to: a) object to prosecutorial misconduct during summation, b) act to preclude testimony regarding Norcutt's pre-trial incarceration, c) properly move for a change of venue, and d) use all peremptory challenges in jury selection. The New York Appellate Division unanimously affirmed the judgment against Norcutt in a reasoned decision issued on March 28, 2014. *People v. Norcutt*, 982 N.Y.S.2d 661, 664 (N.Y. App. Div. 2014). Norcutt applied to the New York Court of Appeals for leave to appeal all claims raised before the Appellate Division, which was summarily denied on May 26, 2014. *People v. Norcutt*, 11 N.E.3d 723, 723 (N.Y. 2014).

Norcutt timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on February 23, 2015.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Norcutt raises the six grounds for relief that he unsuccessfully raised to the state courts on direct appeal, namely that: 1) there was insufficient proof at trial to establish that the trailer was a "building," an element of third-degree arson; 2) the trial court denied Norcutt a fair trial when it failed to conduct any inquiry after Norcutt presented evidence that a juror may have read a newspaper article pertaining to his case; 3) the conviction was against the weight of the evidence because: a) the case against him was circumstantial, and b) there was insufficient proof that he started the fire; 4) he was deprived of the opportunity to present a defense when he was precluded from presenting evidence that Anthony Cartner was an alternative suspect; 5) he was deprived of a fair trial when the jury was presented with evidence showing that he had been incarcerated since his arrest; and 6) trial counsel was ineffective for failing to: a) object to prosecutorial misconduct during summation, b)

act to preclude testimony regarding Norcutt's pre-trial incarceration, c) properly move for a change of venue, and d) use all peremptory challenges in jury selection.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112,

118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Norcutt has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to

contradict the allegations of the return, the court must accept those allegations as true.  *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

## IV. DISCUSSION

A.    <u>Sufficiency of the Evidence/Weight of the Evidence Claims</u> (*Grounds 1, 3*)

Norcutt first argues that there was insufficient evidence to establish that the camping trailer was a "building," as required for third-degree arson, and that the verdict was against the weight of the evidence.

Under New York law relevant to establishing guilt for third-degree arson, "in addition to its ordinary meaning," the term building "includes any structure . . . used for overnight lodging of persons for carrying on business therein."  N.Y. PENAL LAW § 150.00[1].  The New York Appellate Division concluded that, "[e]ven assuming, arguendo, that the trailer did not fit within the ordinary meaning of the term, . . . it constituted a building under the secondary definition of building contained in the statute, i.e., a 'structure . . . used for overnight lodging of persons or used by persons for carrying on business therein.'"  *Norcutt*, 982 N.Y.S.2d at 663.  Norcutt challenges this determination, but, in cases challenging the sufficiency of the evidence supporting a state-court criminal conviction, a federal court's concern is not with the state courts' application of the state law defining the offense, but rather with the state courts' application of federal law.  The interpretation of Penal Law § 150.00[1] is a matter of state law, and this Court is bound by the Appellate Division's determination that the camping trailer constituted a building under New York state law.  *See Bradshaw*, 546 at 76; *Hicks v. Feiock*, 485 U.S. 624, 629-30 & n.3 (1988) (noting that a state appellate court's determination of state law is binding and must be given deference).  Norcutt therefore cannot prevail on this claim.

7

Norcutt additionally contends that the verdict was against the weight of the evidence because it was based on circumstantial evidence that was insufficient to establish that he started the fire. As an initial matter, claims that challenge verdicts as against the weight of the evidence are not cognizable on federal habeas review. *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011). "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "A weight of the evidence argument is a pure state law claim grounded in [CPL] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations." *Id.* (citation and internal quotation marks omitted). The Court therefore denies Norcutt's weight of the evidence claims on that basis.

Moreover, even if Norcutt had properly raised before this Court sufficiency of the evidence claims in this regard, Norcutt would not be entitled to relief. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443

U.S. at 318-19.  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw*, 546 U.S. at 76; *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

In support of his claim, Norcutt attacks the value of the evidence against him.  But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight

to be accorded to the evidence and the credibility of witnesses).  Moreover, a conviction of guilt

may "be proved entirely by circumstantial evidence . . . and a lack of direct evidence does not

preclude a conviction on circumstantial evidence."  *Id*. at 36; *Bossett v. Walker*, 41 F.3d 825, 830

(2d Cir. 1994) (rejecting petitioner's § 2254 sufficiency of the evidence claim where no physical

evidence tied him to the murder because "a conviction may be based upon circumstantial

evidence and inferences based upon the evidence, and the jury is exclusively responsible for

determining a witness' credibility").

     Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if

accepted as credible by the trier of fact, sufficient to sustain conviction.  *See Schlup v. Delo*, 513

U.S. 298, 330 (1995).  In this case, the jury heard testimony that a witness saw in broad daylight

a man with a black tank top, carrying a yellow and blue can, walk away from the front of the

trailer and into a building next door moments before thick smoke covered the street.  While fire

personnel were extinguishing the fire, a police officer discovered Norcutt in his home next door

wearing a black tank top.  The police also discovered a blue and yellow lighter fluid can with

Norcutt's left thumb print on it in the stairs outside Norcutt's home.  Norcutt also gave

inconsistent statements to law enforcement that called his credibility into question.  Such

evidence was sufficient to support Norcutt's conviction, particularly given the deference required

under *Jackson*.  Accordingly, Norcutt is not entitled to relief on these grounds.

B.    <u>Deprivation of Impartial Jury Claims</u> (*Grounds 2, 5*)

     Norcutt next contends that he was denied of an impartial jury because the court did not

inquire whether jurors had read an inflammatory article about the case published during trial and

the jurors learned that Norcutt had been incarcerated since his arrest.

The Sixth Amendment guarantees criminal defendants the right to a "fair trial by a panel of impartial, 'indifferent' jurors." *Irwin v. Dowd*, 366 U.S. 717, 722 (1961); *see Ross v. Oklahoma*, 487 U.S. 81, 85 (1988). During jury selection, "'[t]he trial court has a serious duty to determine the question of actual bias'" but also has "'a broad discretion in its rulings on challenges [to specific jurors].'" *Wainwright v. Witt*, 469 U.S. 412, 429(1985) (quoting *Dennis v. United States*, 339 U.S. 162, 168 (1950)). Accordingly, "[o]n § 2254 review, the state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 813 (2d Cir. 2000).

The record reflects that, while the jury was deliberating, defense counsel informed the court outside of the jury's presence that she had read a newspaper article about Norcutt's case that had been published the previous day. The article apparently referred to Norcutt's 1963 conviction for starting a fire in Chicago that had taken the life of a firefighter and mentioned that certain relatives of the slain firefighter had attended Norcutt's instant trial. Counsel raised her concern that members of the jury may have read the article, and stated that she had noticed that a juror had a newspaper in his lap the previous day. Counsel therefore requested that the court question all the jurors as to whether they had read the article.

The court found that, although the "pretrial publicity" had been "significant," the selected jurors had confirmed their impartiality and agreement that they would decide Norcutt's case "solely" on the evidence. The court further stated that it had admonished the jury not to read, watch, or listen to any news account of the trial, and there was "no indication . . . that any of these jurors violated [the court's] order[s]." The court stated that it must "presume that the jurors had followed the court's orders." The court therefore denied counsel's request.

In a number of well known cases the Supreme Court has found that the degree of inflammatory publicity surrounding a criminal trial was so pervasive that the defendant was denied his right to due process. *See e g.*, *Sheppard v. Maxwell*, 384 U.S. 333 (1966) (countless prejudicial news reports, "carnival" atmosphere at trial, and unbridled jury exposure to the media deprived murder suspect of a fair trial); *Estes v. Texas*, 381 U.S. 532 (1965) (intense pre-trial publicity aggravated by "live" televising of courtroom proceedings over the defendant's objections infringed the defendant's right to due process); *Rideau v. Louisiana*, 373 U.S. 723 (20 minute filmed "confession" by defendant to charges of bank robbery, kidnapping and murder, which was broadcast three times over local television station, compelled change of venue). However, in *Murphy v. Florida*, 421 U.S. 794, 799 (1975), the Court warned that these decisions do not stand for the proposition that potential juror exposure to news reports about the crime for which a defendant is on trial alone presumptively denies the defendant a fair trial; rather the "totality of circumstances" must be considered in determining whether a trial was fundamentally unfair. Indeed, the Supreme Court has explicitly refused to define the contours of what type of inquiry is required by the trial court in cases of jury infiltration of extra-record information. *See Marshall v. United States*, 360 U.S. 310, 311 (1959) ("Generalizations beyond [the] statement [that the trial judge retains great discretion] are not profitable, because each case must turn on its special facts."). Here, the factors to be considered in deciding whether the trial judge committed constitutional error in refusing to poll the jury include the prejudicial content of the article, the likelihood that the jury was exposed to it, and the adequacy of other safeguards to ensure that the jury was not unfairly influenced. *See United States v. Lord*, 565 F.2d 831, 838 (2d Cir. 1977).

Here, the newspaper account, as described by defense counsel on the record, certainly indicates that the article contained prejudicial information about Norcutt. However, a review of the totality of circumstances supports the Appellate Division's rejection of Norcutt's claim. First, the manner in which the voir dire was conducted was calculated to steer the jurors away from adverse publicity. The transcript indicates that the judge allowed counsel wide latitude in questioning jurors and that the jurors were repeatedly examined about their exposure to prejudicial news accounts. By the time defense counsel suggested that the jurors be questioned about the article, the trial judge had already issued numerous warnings to the jurors not to read or listen to any material relating to the subject matter of the trial. Accordingly, the Court finds that the voir dire as a whole was conducted with a high degree of sensitivity to the possibility of unfair influence on the jury.

Moreover, the off-hand manner in which defense counsel applied to have the jury polled as well as the failure to make a showing that the jurors were likely to be exposed to the article did little to suggest that the already considerable safeguards taken by the trial judge were inadequate. The defense did not establish more than a limited possibility that a juror might have come across the article, and thus failed to demonstrate that greater precautions were required to ensure the impartiality of the jury. While it would always be the safer course to poll the jurors, if for no other reason than to foreclose litigation such as this, the Court concludes that the failure to do so here did not amount to constitutional error. Norcutt is therefore not entitled to relief on this claim.

Norcutt also complains that he was deprived of an impartial jury because the jury was presented with evidence that he was in jail. The record reflects that the prosecution called to

testify an administrative clerk for the Onondaga County Justice Center, who identified records, which were also entered as exhibits, showing that Norcutt was housed with Beaumont while in jail. The evidence was presented in anticipation of Beaumont's testimony regarding admissions Norcutt allegedly made about the fire while they were housed together. The following day, however, the prosecutor informed the court, outside the presence of the jury, that Beaumont had made himself unavailable due to intimidation. The court credited the prosecution's representation that, at the time the jail records were introduced, the prosecutor did not know that Beaumont would refuse to testify. The prosecution then withdrew the jail records, and the court stated that it would not provide those exhibits to the jury during its deliberations. After consulting with the parties, the court admonished the jury as part of its final instructions that "no inferences [were] to be drawn against [Norcutt]" because he "may have been held in custody during the pendency of this matter."

On the second day of deliberations, the jury submitted a note requesting certain exhibits and testimony which also asked whether there was medical documentation of Norcutt's hearing loss and if he "[had] a mental evaluation while in jail." After conferring with the parties, the court addressed the jury as follows:

> [Y]ou cannot speculate in any way about any matters not in evidence. And your decision about the facts of this case . . . must be based solely upon the evidence. . . . . You cannot speculate about those items.
> . . . .
> And additionally, the fact that Mr. Norcutt had been, has been held in custody, is not to be - - you are not, you are absolutely not to draw any inferences against [Norcutt] by virtue of that fact. Everyone understand that? People are held in custody for various reasons. And you are not to draw any inferences against [Norcutt] by virtue of him having been in custody at some point.

The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment, and courts must be alert to factors that may undermine the fairness of the fact-finding process. *Estelle v. Williams*, 425 U.S. 501, 503 (1976). While in *Estelle*, the Court held that the practice of having a defendant appear before the jury dressed in prison clothes deprived the defendant of the presumption of innocence, the rule of *Estelle* does not apply "to every 'mere utterance of the words [jail, prison or arrest],' without reference to context or circumstances." *United States v. Atencio*, 435 F.3d 1222, 1237 (10th Cir. 2006) (bracketed text in the original) (quoting *United States v. Villabona–Garnica*, 63 F.3d 1051, 1058 (11th Cir. 1995)); *see also United States v. Faulk*, 53 F. App'x 644, 648 (3d Cir. 2002). The test is whether a particular practice "'was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial . . .,' or whether the defendant shows actual prejudice resulting from the practice." *United States v. Walsh*, No. 86-3093, 1986 WL 18521, at \*3 (6th Cir. Dec. 4, 1986) (quoting *Holbrook v. Flynn*, 475 U.S. 560, 572 (1986)).

"[A] brief and fleeting comment on the defendant's incarceration during trial, without more, does not impair the presumption of innocence to such an extent that a mistrial is required." *United States v. Deandrade*, 600 F.3d 115, 119 (2d Cir. 2010). In *Deandrade*, two prosecution witnesses made reference to the fact that Deandrade was incarcerated at the time of his trial, but the Second Circuit held that the district court had not abused its discretion in denying a mistrial because the two references were (1) isolated, and apparently unintentional on the part of the prosecution; (2) incidental to legitimate areas of inquiry; and (3) never referenced by the Government again during the trial. *Id.* at 119 (citing *United States v. Castano*, 999 F.2d 615, 618 (2d Cir. 1993)) (concluding that it was "extremely unlikely" that improperly admitted

evidence contributed to the guilty verdict because "[t]he introduction of the evidence was inadvertent [and] . . . the prosecution did nothing to emphasize the statements at the time they were made, and never referred to them thereafter").

Here, an independent review of the record reflects that the administrative clerk's testimony did not "undermine the fairness of the fact-finding process" or impair the presumption of innocence. *See Estelle*, 425 U.S. at 503. First, the clerk's testimony was brief. Second, the prosecution did not preview Beaumont's testimony in their opening or refer to Norcutt's incarceration in its opening statement or summation. Additionally, and most importantly, the court gave curative instructions that the jury "not . . . draw any inferences" from the fact that Norcutt may have been in custody at some point, and repeatedly instructed the jury regarding the presumption of innocence. This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis v. Franklin*, 471 U.S. 307, 323-24 & n.9 (1985) (discussing the subject in depth). Norcutt is therefore not entitled to habeas relief on this claim either.

C.     Right to Present a Defense Claim (*Ground 4*)

Norcutt additionally argues that he was deprived of his right to present a complete defense when he was precluded from eliciting testimony about Anthony Cartner as an alternative suspect. As an initial matter, "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In finding this claim unpreserved for appellate review, the Appellate Division relied upon New York's

contemporaneous objection rule, New York CPL § 470.05(2), which has long been considered an "adequate and independent ground" that bars federal habeas review. *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011). New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 647 N.E.2d 1243, 1246-47 (N.Y. 1995). As Norcutt did not claim before the trial court that he was denied his constitutional right to present a defense, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule, and the claim is denied on that basis.

Moreover, the claim is without merit. The rights to present a defense, to confront and cross-examine witnesses, and to call witnesses in one's own behalf are essential to the due process guaranteed by the Fourteenth Amendment. Chambers v. Mississippi, 410 U.S. 284, 294 (1973). However, the trial court has wide discretion to impose limitations on the cross-examination of a witness. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "[W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 126 S. Ct. 1727, 1732 (2006). "[A]lthough Supreme Court precedent clearly establishes the general contours of a criminal defendant's right to present potentially exculpatory evidence, the Court has not articulated the specific set of circumstances under which a criminal defendant must be permitted to introduce evidence of potential third-party culpability." *Wade v. Mantello*, 333 F.3d 51, 58 (2d Cir. 2003). The Second Circuit has explained that "such evidence must be admitted when, under the 'facts

and circumstances' of the individual case, its exclusion deprived the defendant of a fair trial." *Id.* (quoting *Chambers*, 410 U.S. at 303).

Here, however, Norcutt fails to show that he was deprived of a fair trial by the court's evidentiary ruling. The record shows that defense counsel was only precluded from asking about the Anthony Cartner's criminal history. In summation, defense counsel suggested that because Cartner was a "volunteer fireman," he may have had "knowledge and the expertise to be able to make the fire," such that he was "not ruled out" as a suspect by police. Counsel also suggested that William Cartner was "protect[ing] his son." The record therefore indicates that Norcutt was able to argue the existence of an alternative suspect.

Likewise, Norcutt fails to show that the exclusion of the evidence deprived him of a fair trial. In *Holmes*, the Supreme Court held that the petitioner was denied a fair trial where he was not allowed to introduce the testimony of several witnesses who placed another man in the victim's neighborhood on the morning of the assault and four other witnesses who testified that this other man either acknowledged that the petitioner was innocent or admitted to committing the crimes. *See Holmes*, 126 S. Ct. at 1730. Unlike *Holmes* where there was powerful evidence of third-party guilt for the offense at issue, here there was no evidence of third-party guilt beyond rank speculation and no other person who confessed to the offenses in this case. It was thus neither contrary to nor an unreasonable application of clearly established federal law for the trial court to conclude that it was constitutionally permissible to exclude testimony speculating about third-party culpability in this case. Accordingly, Norcutt is not entitled to relief on this ground.

D.     <u>Ineffective Assistance of Counsel</u> (*Ground 6*)

Finally, Norcutt alleges that his trial counsel was ineffective for a variety of reasons. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Norcutt must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New

York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

Norcutt's ineffective assistance claims fail, however, even under the more favorable New York standard. Norcutt first claims that counsel was ineffective for failing to object to the prosecutor's summation. Although he does not provide details for this claim in his Petition, it

appears that he is re-asserting his claim raised on direct appeal that the prosecution's summation denigrated the defense by stating that Norcutt's attempt to distance himself from the fire when he first spoke to law enforcement was all "smoke and mirrors." It is improper as a matter of both state and federal law for a prosecutor to impugn defense counsel's integrity, denigrate or ridicule the defense theory, or make *ad hominem* attacks on defense counsel. *See, e.g.*, *United States v. Biasucci*, 786 F.2d 504, 513-14 & n.9 (2d Cir. 1986) (characterizing as "clearly . . . inappropriate" the prosecutor's "needless and unwarranted *ad hominem* attacks against defense counsel[,] . . . [f]or instance, the prosecutor addressed defense counsel at one point as 'you sleaze,' at another as 'you hypocritical son-,' as being 'so unlearned in the law,' and on several occasions the prosecutor objected to questions by the defense as 'nonsense'" (internal citations to the record omitted)); *People v. LaPorte*, 762 N.Y.S.2d 55, 57-58 (N.Y. App. Div. 2003) (reversing conviction where prosecutor's remarks during summation were not fair response to defense counsel's summation and thus denied defendant a fair trial because evidence against defendant was not overwhelming, prosecutor impugned defense counsel's integrity, ridiculed the defense theory as "mumbo jumbo," and "warned the jurors . . . several times that defense counsel was manipulating them and trying to prevent them from using their common sense") (citation omitted). But as the Second Circuit has noted, "a prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995) (citation and internal brackets omitted). Here, the allegedly-denigrating comment may be viewed as a proper inference from the evidence presented at trial and constituted a fair response to defense counsel's summation, in which he challenged the veracity of the prosecution's witnesses and the strength of its case. *See Knight v. Walsh*, 524 F. Supp. 2d

255, 287 (W.D.N.Y. 2007). Indeed, Norcutt cannot show that the comment was improper in any

event because, as a sister Circuit has held, "the prosecutor's characterization of the defense's

case as 'smoke and mirrors' [i]s not misconduct" because it goes to "'the strength of the defense

on the merits" and "d[oes] not amount to an ad hominem attack on defense counsel." *See United

States v. Ruiz*, 710 F.3d 1077, 1086 (9th Cir. 2013) (citations omitted); *see also Summa v.

Plescia*, No. 07-cv-4668, 2008 WL 1818794, at *8 (E.D.N.Y. Apr. 22, 2008) ("As a threshold

matter, it is doubtful that [remarks referring to defense as smoke and mirrors] . . . were even

improper."). Accordingly, counsel cannot be faulted for failing to object. *See Lockhart v.

Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless

objection cannot constitute prejudice under a *Strickland* ineffective assistance of counsel claim).

Norcutt also contends that counsel should have moved to preclude testimony concerning

Norcutt's pretrial incarceration. But, as discussed above, the record indicates that the

prosecution believed it would offer Beaumont as a witness when it proffered the testimony and

evidence regarding Norcutt's incarceration. Counsel therefore had no basis to seek the exclusion

of the evidence. And, importantly, counsel moved for a mistrial after Beaumont failed to testify.

Norcutt therefore fails to show that trial counsel's actions constituted ineffectiveness.

Norcutt additionally alleges that counsel was ineffective for failing to properly move for

a change of venue. However, courts have been reluctant to find constitutional violations for a

failure to move for a change of venue where a fair and impartial jury was empaneled and there is

no proof that media coverage influenced the jury's verdict. *See United States v. Kennedy*, 21 F.

App'x 82, 86 (2d Cir. 2001) ("The court had little trouble empanelling a fair and impartial jury

and . . . the pretrial publicity had not caused a clear and convincing buildup of prejudice among

the jurors.").  As previously discussed, Norcutt has not established that any news accounts of his case reached the jury or that any juror formed a bias or otherwise acted upon such information in reaching a verdict, and the record shows that the trial judge repeatedly admonished the jury to refrain from watching, reading, or listening to any news accounts on the matter.  Consequently, because Norcutt has failed to show that the news coverage of the case played any role in the jury's verdict, counsel's decision not to move for a change of venue was not deficient in any way.

Finally, Norcutt faults counsel for failing to exhaust his peremptory challenges during jury selection.  Under New York law, an erroneous ruling by the trial court denying a challenge for cause does not constitute reversible error unless the defendant has exhausted his peremptory challenges at the time, or unless the defendant peremptorily challenges the prospective juror and exhausts his peremptory challenges before jury selection is complete.  CPL § 270.20(2).  But Norcutt does not allege that the trial court erred in denying any for-cause challenges, and therefore does not show that he was prejudiced in any way by the fact that counsel did not use all allotted peremptory challenges.  Norcutt is thus not entitled to relief on any of his ineffective assistance claims.

## V. CONCLUSION

Norcutt is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a

certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

Dated: December 23, 2016.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge